# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**STEPHEN BARDFIELD and**
**CHARLES CARVER,**

    **Plaintiffs,**

v.                                                         Case No. 3:09cv232/MCR/MD

**CHISHOLM PROPERTIES CIRCUIT**
**EVENTS, LLC and**
**JOHNNY CHISHOLM, Individually**

    **Defendants**
_____/

## O R D E R

This matter is before the court on plaintiffs Stephen Bardfield's and Charles Carver's motion for preliminary injunction filed June 1, 2009.  On June 3, 2009, the court issued a temporary restraining order and writ of attachment freezing and attaching certain enumerated funds held in various accounts of defendants Chisholm Properties Circuit Events, LLC ("CPCE") and Johnny Chisholm ("Chisholm").  A hearing on plaintiffs' motion was held on June 9, 2009, which defendant Chisholm failed to attend, following which the court entered a second amended temporary restraining order.[1]  As explained below, plaintiffs' motion for preliminary injunction is GRANTED.

Defendant Chisholm is the founder and producer of the One Mighty Weekend ("OMW") event held annually in Orlando, Florida as part of Orlando "Gay Days."[2]

---

[1] The court modified its prior temporary restraining order by freezing and attaching assets in specific corporate entities and merchant accounts owned by Johnny Chisholm.

[2] Johnny Chisholm is well-known as a major producer of gay "circuit" parties.

Traditionally comprising ten separate parties held at various Disney World sites, the OMW attracts approximately 150,000 people to Orlando.  Chisholm produces the Orlando event through defendant CPCE.  On February 20, 2009, plaintiffs executed a promissory note with CPCE for $200,000 so that CPCE could secure the Disney venues for the 2009 OMW parties.  An addendum to the note requires defendants to make monthly payments on the principal amount beginning on April 1, 2009, with each payment equivalent to 25% of collected sales for the OMW, and the balance to be repaid no later than June 4, 2009.  An interest payment of $40,000 was to be paid to plaintiffs by June 7, 2009.  An acceleration clause in the note also provides that if defendants fail to pay any installment, or default on payment of the note at maturity, the entire debt will be due at the option of the plaintiffs.  No payments have been made on the note despite the plaintiffs' requests.  On June 1, 2009, plaintiffs filed suit in this court alleging defendants have failed to make any payments owed under the note and asserting the following claims: breach of a promissory note; fraud in the inducement; conversion; unjust enrichment; civil theft; breach of contract; and violations of the Florida Racketeer and Corrupt Organization Act ("RICO").  Fla. Stat. § 895.01 *et seq*.

     Issuance of a preliminary injunction pursuant to Fed.R.Civ.P. 65(a) is governed by a well-established test under which the moving party must show (1) it has a substantial likelihood of success on the merits, (2) there is a substantial threat it will suffer irreparable injury unless the injunction issues, (3) the threatened injury outweighs whatever damage the proposed inunction may cause the opposing party, and (4) the injunction is not adverse to the public interest.  *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994).  A preliminary injunction is an extraordinary remedy that cannot be granted until the movant clearly carries the burden of persuasion on all four factors.  *Id*.  Injunctive relief can only stem from a claim based in equity, *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289, 61 S.Ct. 229, 233, 85 L.Ed. 189 (1940), and an unsecured creditor has no right at law or equity in his debtor's property.  *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 330, 119 S.Ct. 1961, 1973, 144 L.Ed.2d 319 (1999).  Florida law also prohibits injunctive relief to a plaintiff who has an adequate remedy at law even when

the plaintiff alleges the defendant will dissipate its assets. *M.I. Industries USA, Inc. v. Attorneys' Title Ins. Fund, Inc.*, 6 So.3d 627, 628-29 (Fla. 4th DCA 2009).

The Florida RICO statute, however, specifically authorizes preliminary injunctions, Fla. Stat. § 895.05(6), and Florida state and federal courts have used this statutory basis to place prejudgment restrictions on a defendant's right to dispose of assets.[3] *See*, *e.g.*, *Banco Indus. de Venezuela, C.A. v. Mederos Suarez*, 541 So.2d 1324 (Fla. 3d DCA 1989); *Hudson National Bank v. Shapiro*, 695 F.Supp. 544 (S.D. Fla. 1988). The statute makes it unlawful "for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity." Fla. Stat. 895.03(3).[4] In a civil RICO action based on mail or wire fraud, a plaintiff must demonstrate (1) the defendant intentionally participated (2) in a scheme to defraud (3) the plaintiff of money or property (4) through material misrepresentations (5) using the mail or wire communications (6-7) and that the plaintiff reasonably relied on the misrepresentations, (8) suffered an injury as a result of the reliance, and (9) has incurred a specifiable amount of damages. *Palmas Y Bambu, S.A. v. E.I. Dupont de Nemours & Co., Inc.*, 881 So.2d 565, 571 (Fla. 3d DCA 2004).

Chisholm is the co-owner of both defendant CPCE, which produces the Orlando OMW event, and Chisholm Global Events, LLC ("Global Events"), which produced a similar party at Disney's Paris, France location in 2007. Chisholm approached plaintiffs through an intermediary for a $200,000 loan to secure Disney's Orlando venues for the 2009 OMW.

---

[3] A federal court whose jurisdiction is based on diversity applies the substantive law of the state in which it sits. *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1444 (11th Cir. 1991). Unlike the standard under Fed.R.Civ.P. 65, Florida's RICO statute provides that "no showing of special or irreparable harm or damage to the person shall have to be made" for injunctive relief. Fla. Stat. § 895.05(6). However, the Eleventh Circuit has held the Rule 65 standard applies when a federal court sitting in diversity issues a preliminary injunction under state law even when, as here, state law establishes a different standard. *Ferrero*, 923 F.2d at 1448.

[4] The Florida RICO statute is patterned after the federal statute and uses the same interpretive criteria. *Gross v. State*, 765 So.2d 39, 42-43 (Fla. 2000). A "pattern" of activity requires at least two acts occurring within ten years of one another, 18 U.S.C. § 1961(5), and an "enterprise" is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

In order to persuade plaintiffs to make the loan, Chisholm mailed them a personal financial statement dated January 31, 2009 stating he was not a party to any lawsuit. Chisholm also sent plaintiffs an email on February 18 projecting the total sales of the 2009 OMW to be $910,000. Plaintiffs considered the Disney venues to be an important part of the OMW's past success, and when concerns arose over whether Chisholm had secured the sites for the 2009 event, Chisholm sent plaintiffs an email on March 30, 2009 stating he had "worked it out with Disney." Chisholm reconfirmed that fact in a subsequent telephone conversation with defendant Carver. Relying on these representations by phone and electronic communications, plaintiffs wired money to Florida to reserve the Disney sites for the OMW parties. In reality, Chisholm was already a defendant in two lawsuits, and plaintiffs later learned none of the Disney venues had ever been secured by Chisholm. Plaintiff Carver testified the money wired to defendants was never deposited in a CPCE account, nor were Chisholm's representations that pre-event ticket sales were "trending up" true. Chisholm told Carver December ticket sales were $147,000, January sales were $122,00, and that Chisholm expected May receipts to be $332,000. According to Carver, all of these representations were false.

Ray DeForest, a plaintiff in another lawsuit pending in this court against Chisholm and Global Events, testified to a similar pattern of activity in connection with the Paris event.[5] Chisholm contacted DeForest in January, 2007 for a $150,000 investment in the Paris party. Through a variety of phone calls and electronic mailings, Chisholm submitted documents and made oral assurances the Paris party would take in $2 million and that Chisholm could obtain popular entertainers at a low cost through his special relationship with the Elton John AIDS Foundation. In fact, Chisholm spent $1.5 million to rent Disney's Paris site, paid $2 million to hire singer Mariah Carey, and was warned by Disney to expect no more than 300 people instead of the projected 12,000 to 15,000. The Paris event resulted in a loss of $3 million. DeForest later learned $100,000 of the money he wired to Chisholm was deposited in CPCE's account even though Global Events, not CPCE, was

---

[5] *DeForest v. Johnny Chisholm and Johnny Chisholm Global Events, LLC.* Case No. 3:08cv498/MCR/EMT.

Case No. 3:09cv232/MCR/MD

the Paris promoter. As with plaintiffs Bardfield and Carver, Chisholm's representations to DeForest about his financial status and the projected revenues from the events were made through phone, mail, or electronic means.

This undisputed evidence demonstrates plaintiffs have a substantial likelihood of success on their Florida RICO claim against defendants. The evidence indicates Chisholm is a "person" under the RICO statute and is associated with CPCE/Global Events (whose legal boundaries were repeatedly disregarded) as an "enterprise" to commit fraudulent acts designed to promote the OMW events. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S.Ct. 2087, 2091, 150 L.Ed.2d 198 (2001). Furthermore, the similarities between the manner in which Chisholm induced plaintiffs to invest in the Orlando OMW and DeForest in the Paris party suggest a "pattern" of fraudulent activity under RICO, which requires at least two predicate acts related to each other by means of similar purposes, results, victims, or methods of commission. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14, 105 S.Ct. 3275, 3285 n.14 87 L.Ed.2d 346 (1985). Plaintiffs and DeForest reasonably relied on what appear to be deceptive representations made by Chisholm and suffered a specifiable loss. *See Ayres v. General Motors Corp.*, 234 F.3d 514, 520-21 (11th Cir. 2000) (requiring an intentional scheme to defraud by using the mail or wires as part of the scheme).

The court also finds a substantial likelihood plaintiffs will be irreparably harmed without injunctive relief. A showing of such harm is "the *sine qua non* of injunctive relief." *Northeastern Fla. Chapter of Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (citation omitted). Chisholm's deposition testimony in the *DeForest* case portrays accounting practices that recognize few divisions between Chisholm's various corporate entities.[6] Chisholm admits his standard practice is for one corporation to pay the bills of other companies and individuals whenever money is available. For example, defendant CPCE's funds as well as money from Chisholm Properties were used to pay Global Events' expenses related to the Disney Paris event,

---

[6] Defendant Chisholm's deposition was taken in the *DeForest* case on April 16, 2009.

and 2007 ledger entries for the Orlando OMW Welcome Center were, in fact, door proceeds from the Paris event. As Chisholm himself stated, money from defendant CPCE "could go anywhere. It could go to properties. It could go to any entity that we own." This is especially disturbing because Chisholm has negative equity in many of his properties and has filed for bankruptcy on behalf of Chisholm Properties of Pensacola, LLC. Furthermore, evidence produced at the June 9 hearing reflects that credit card transactions at the recently-held Orlando OMW event were not credited to CPCE but to an unrelated merchant account, and receipts were not given for cash purchases. Wachovia Bank, where CPCE's proceeds from the recent OMW should have been deposited, had not received any money from defendants as of June 9 despite this court's order requiring defendants to provide a full accounting of the OMW proceeds.[7] Moreover, defendants credited refunds given at the Orlando event to CPCE, thereby depleting its assets. Given these practices and Chisholm's failure to appear at the evidentiary hearing, the court perceives the threat to plaintiffs' interest in recovering on their promissory note outweighs any damage injunctive relief might cause to defendants.

Finally, the court also finds granting injunctive relief is not adverse to the public interest. Where a party demonstrates both the likelihood of success on the merits and irreparable injury, "it almost always will be the case that the public interest will favor" injunctive relief. *American Tel. & Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). Defendants have shown a willingness to transfer funds between corporate entities without regard to plaintiffs' rights or the court's order, and the evidence indicates a pattern of misleading statements that induced plaintiffs to invest in the OMW event. "It is in the interest to protect against fraud and to make victims of fraud whole, while preventing wrongdoers from benefitting from their deceit." *S.E.C. v. Asset Recovery and Mgt.Trust, S.A.*, 340 F.Supp.2d 1305, 1311 (M.D. Ala. 2004).

---

[7] Defendants' failure to comply with the accounting requirements in the court's order issued before the recent Orlando OMW prompted the modifications in the court's second amended temporary restraining order.

**IT IS THEREFORE ORDERED:**

1. Any monies received from any OMW event shall be fully accounted for with true and accurate receipts and are subject to this injunction and an immediate accounting by defendants.

2. Any payments made by defendants using the cash proceeds shall be made only to third party vendors who provided services to the 2009 OMW events, shall be made in the ordinary course of business, and shall be fully accounted for with true and accurate documentation and invoice information.

3. All remaining cash proceeds, after payment of third party expenses required to be paid immediately and under the terms of this injunction, shall immediately after the OMW events be deposited in a Chisholm Properties Circuit Event, LLC bank account described herein and subject to this injunction.

4. All employees, representatives, vendors or individuals who sold tickets or collected proceeds for OMW event parties must be advised of the existence of this injunction and specifically instructed: "All transactions and/or ticket sales, whether by cash or credit card, are subject to a court injunction. All such transactions and sales must be done in the ordinary course of defendants' business, and all sales shall be properly registered and documented with true and accurate receipts showing the exact number of tickets sold and money collected. Any failure to document transactions or failure to report sales or cash proceeds could violate a federal court injunction."

5. Defendants are prohibited from transferring any funds outside the ordinary course of business, and no funds may be transferred to entities related to Chisholm Properties Circuit Events, LLC.

6. Defendants are prohibited from destroying any business records or documents related to this action.

7. This preliminary injunction freezes and attaches the funds held in defendants' accounts in the following depositories. Each such entity shall hold unencumbered funds until the $200,000 amount owed under the February 20, 2009 promissory note is satisfied in the aggregate. Additionally, no cash payments shall be made for salary or to

defendants' related entities or to individuals directly or indirectly controlled by defendants or their members. Thereafter, any funds above said $200,000 will be released to defendants for use in their ordinary course of business:

    a.    First Data Independent Sales by Card Services International
Corporate Office
Attn: Business Solutions
6101 Condor Drive
Moorepark, CA 93021
Phone: 402-916-6905
1-877-272-7915
businesssolutions@firstdata.com

All Merchant Accounts for any and all of the following: Johnny Chisholm, Chisholm Properties Circuit Events, LLC, One Mighty Weekend Memorial Day Pensacola, Johnny Chisholm Global Events, LLC, Reunion Events, Inc., Chisholm Properties of Pensacola, LLC, Emerald City of Pensacola, Inc., One Mighty Weekend, Beach Ball, Let's Go Play, 200 E. Garden Street, LLC, Louisiana Interests, Inc., 800 Bourbon Street, LLC, Oz Bar, Chisholm Properties of Baton Rouge, LLC, and any other merchant accounts related to the defendants herein, including but not limited to the following Merchant Accounts: #267677367885, #267634162882.

    b.    First Data Independent Sales by Card Services International
Attn: Legal Papers
6200 South Quebec Street, Suite 270
Greenwood Village, CO 80111
legalpapers@firstdata.com
Phone: 303-967-8000
Toll Free: 800-735-3362
1-877-274-7915

All Merchant Accounts for any and all of the following: Johnny Chisholm, Chisholm Properties Circuit Events, LLC, One Mighty Weekend Memorial Day Pensacola, Johnny Chisholm Global Events, LLC, Reunion Events, Inc., Chisholm Properties of Pensacola, LLC, Emerald City of Pensacola, Inc., One Mighty Weekend, Beach Ball, Let's Go Play, 200 E. Garden Street, LLC, Louisiana Interests, Inc., 800 Bourbon Street, LLC, Oz Bar, Chisholm Properties

        of Baton Rouge, LLC, and any other merchant accounts
related to the defendants herein, including but not
limited to the following Merchant Accounts: #267677367885,
#267634162882.

   c.     Wachovia Bank, N.A. ABA
        21 East Garden Street, Pensacola, FL 32501

        All accounts for any and all of the following:
Johnny Chisholm, Chisholm Properties Circuit Events, LLC, One
Mighty Weekend Memorial Day Pensacola, Johnny Chisholm
Global Events, LLC, Reunion Events, Inc., Chisholm
Properties of Pensacola, LLC, Emerald City of Pensacola,
Inc., One Mighty Weekend, Beach Ball, Let's Go Play,
200 E. Garden Street, LLC, Louisiana Interests, Inc.,
800 Bourbon Street, LLC, Oz Bar, Chisholm Properties
of Baton Rouge, LLC, and any other merchant accounts
related to the defendants herein, including but not
limited to the following accounts: Routing # 063000021;
Account #2000035709413.

   d.     Beach Community Bank
        Fort Walton Beach, FL 32548

        All accounts for any and all of the following:
Johnny Chisholm, Chisholm Properties Circuit Events, LLC, One
Mighty Weekend Memorial Day Pensacola, Johnny Chisholm
Global Events, LLC, Reunion Events, Inc., Chisholm
Properties of Pensacola, LLC, Emerald City of Pensacola,
Inc., One Mighty Weekend, Beach Ball, Let's Go Play,
200 E. Garden Street, LLC, Louisiana Interests, Inc.,
800 Bourbon Street, LLC, Oz Bar, Chisholm Properties
of Baton Rouge, LLC, and any other accounts related to
the defendants herein.

   e.     American Express

        All accounts for any and all of the following:
Johnny Chisholm, Chisholm Properties Circuit Events, LLC, One
Mighty Weekend Memorial Day Pensacola, Johnny Chisholm
Global Events, LLC, Reunion Events, Inc., Chisholm
Properties of Pensacola, LLC, Emerald City of Pensacola,
Inc., One Mighty Weekend, Beach Ball, Let's Go Play,

200 E. Garden Street, LLC, Louisiana Interests, Inc., 800 Bourbon Street, LLC, Oz Bar, Chisholm Properties of Baton Rouge, LLC, and any other merchant accounts related to the defendants herein, including but not limited to the following account: Merchant Number 8504337494.

8. All above-referenced institutions have an obligation to disclose to plaintiffs and the court the amount held in such accounts upon receipt of this injunction.

9. Defendants are enjoined from concealing, converting, selling, transferring, or otherwise dissipating any assets, including cash, in which they have an ownership interest, legal or beneficial, which may be subject to an approximately $200,000 monetary judgment rendered in favor of plaintiffs.

10. Defendant Chisholm is ordered to keep complete business records on cash receipts from the 2009 OMW event, as well as any other cash receipts received in the ordinary course of business, and provide an affidavit on the truth of such records or provide an auditor or overseer to watch the sales.

11. Defendants are ordered to comply fully with all reasonable discovery requests and to preserve any and all evidence relating to all transactions with plaintiffs.

12. This preliminary injunction shall remain in full force and effect until it is further modified or terminated by order of the court. The bond posted by plaintiffs with the clerk of this court shall remain in place for the duration of the preliminary injunction.

**DONE AND ORDERED** this 12th day of June, 2009.

 *s/ M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**